FILED
2019 Aug-23 PM 02:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ALEXANDRA SAENZ, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil Action Number ) **2:18-cv-01363-AKK** |
| ROBERT WILKIE, SECRETARY OF VETERANS AFFAIRS, | ) ) ) ) |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Alexandra Saenz brings this action, proceeding *pro se*, against her former employer the United States Department of Veterans Affairs for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*, as amended, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a). *See* doc. 1 at 3. Saenz alleges that the VA discriminated against her by failing to accommodate her disability and by discharging her because of her gender, disability, race, and national origin. *See* doc. 1 at 5, 8. The VA has moved to dismiss for lack of subject matter jurisdiction and failure to exhaust administrative remedies under Title VII and the ADA. *See* doc. 6. Specifically, the VA contends that the court lacks subject matter jurisdiction over the ADA claims, and that Saenz failed to exhaust administrative remedies for her other claims. *See* doc. 6 at 1. After reading the briefs, *see id.*; docs.

1

10, 12, reviewing the evidence, and considering the relevant law, the court finds that the motion is due to be granted as to the ADA claims and Title VII national origin discrimination claim, but denied as to the Title VII race and gender discrimination claims.

## I. STANDARD OF REVIEW

The VA brings its motion pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A 12(b)(1) challenge for lack of subject matter jurisdiction may take the form of a facial or factual attack on the complaint. *See McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). A facial attack "'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction' taking 'the allegations in [her] complaint . . . as true.'" *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). By contrast, a factual attack challenges "'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings . . . are considered.'" *Id.* (quoting *Lawrence*, 919 F.2d at 1529). "[W]hen a defendant properly [raises a factual] challenge[ ] . . . 'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional issue.'" *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) (quoting *Lawrence*, 919 F.2d at 1529).

On the other hand, Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Id*. (citations and internal quotation marks omitted). Moreover, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

However, where, as here, a party moves to dismiss based on a failure to exhaust administrative remedies, the Eleventh Circuit has indicated a slightly different standard applies. In *Bryant v. Rich*, the Eleventh Circuit held that, under

the PLRA, "exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits," 520 F.3d 1368,1374-75 (11th Cir. 2008), and, therefore, "should be decided on a Rule 12(b) motion to dismiss[,]" *id*. at 1375-76. Although the court did not specify which 12(b) motion was appropriate for a failure-to-exhaust defense, it explained that,

> where exhaustion—like jurisdiction, venue, and service of process—is treated as a matter in abatement and not an adjudication on the merits, it is proper to consider facts outside of the pleadings and resolve factual disputes so long as the factual disputes do not decide the merits, and the parties are given sufficient opportunity to develop the record.

*Bryant*, 520 F.3d at 1376 (citations omitted). While *Bryant* only concerned PLRA claims, several courts in this circuit have applied the standard of review from *Bryant* to Title VII claims. *See*, *e.g.*, *Basel v. Sec'y of Defense*, 507 F. App'x 873, 875 (11th Cir. 2013); *Tillery v. U.S. Dep't of Homeland Sec.*, 402 F. App'x 421, 424 (11th Cir. 2010); *Nodd v. Integrated Airline Servcs., Inc.*, 41 F. Supp. 3d 1355, 1363-64 (S.D. Ala. 2014). Under *Bryant*'s two-step process,

> First, the court must look to the factual allegations in the defendant's motion and the plaintiff's response, taking the plaintiff's version of the facts as true to the extent that it conflicts with that of the defendant. If the complaint is not subject to dismissal at this step, the court must then make specific findings to resolve the parties' factual disputes, and determine whether the defendant bore its burden of proving that the plaintiff failed to exhaust his administrative remedies.

*Basel v. Sec'y of Def.*, 507 F. App'x 873, 875 (11th Cir. 2013) (internal citations omitted) (citing *Turner v. Burnside*, 541 F.3d 1077, 1082, 1082-83 (11th Cir. 2008).

Notably, some courts before and after *Bryant* have treated motions to dismiss based on failures to exhaust administrative remedies under Title VII as 12(b)(6) motions for failure to state a claim. *See*, *e.g.*, *Banks v. Ackerman Sec. Sys., Inc.*, No. 109CV0229CC, 2009 WL 974242, at *2 (N.D. Ga. Apr. 10, 2009) ("The Court dismisses these claims pursuant to Rule 12(b)(6) rather than Rule 12(b)(1) because exhaustion of administrative remedies [under Title VII] is not a jurisdictional prerequisite."); *Howell v. Dep't of the Army*, 975 F. Supp. 1293, 1296-97 (M.D. Ala. 1997) ("[F]ailure to meet a filing deadline constitutes failure to state a claim for purposes of a motion to dismiss under Rule 12(b)(6) . . ."). However, because *Bryant* advises that "where . . . exhaustion is not adjudicated as part of the merits, it is unlike a defense under Rule 12(b)(6) for failure to state a claim, which is generally decided on the merits[,]" the court finds that the present motion to dismiss for failure to exhaust administrative remedies should not be analyzed under Rule 12(b)(6). *See Nodd*, 41 F. Supp. 3d at 1364 n.9 (applying *Bryant* standard, rather than Rule 12(b)(6) standard, to Title VII motion).

## II. FACTUAL BACKGROUND

This case arises out of Saenz's discharge by the VA on October 30, 2017. *See* doc. 1. Saenz, a Hispanic woman originally from Spain and Mexico, alleges that the VA discharged her because of her disabilities, race, sex, and national origin. *See id.* at 5, 8. Saenz's alleged disabilities included her pregnancy, post-partum depression,

post-partum anxiety, post-partum obsessive compulsive disorder, and post-traumatic stress disorder. *See id.* at 5.

Saenz last worked in the VA's Physical Medicine and Rehabilitation ("PM&R") Department. *See id.* at 8. While working in PM&R, she "always had problems with getting a reasonable accommodation due to [her] disabilities." *Id.* Specifically, the PM&R Department required her to begin the "whole [accommodation] process" anew, even though the VA had medical documentation of her disabilities and she received accommodations while working in another department. *See id.* Furthermore, even when the VA provided her accommodations, it would subsequently revoke these accommodations when Saenz's co-workers complained about the unfairness of the accommodations. *See id.* By contrast, when Saenz's coworkers requested an accommodation, the VA granted their requests without making them "jump through hoops" and no one complained. *Id.*

Moreover, Saenz's co-workers were "verbally abusive" and "made fun of [her] disabilities." *Id.* When Saenz "complain[ed]" about these incidents, her co-workers submitted "fake complaints" about her and, consequently, the Chief of PM&R threatened to take disciplinary actions against her such as "write ups" or "bad assessments." *Id.* At some point, Saenz's supervisor, Courtney Lassiter, informed her that the Chief would not take disciplinary actions against her co-workers because they, unlike Saenz, were black. *Id.*

Beginning in June 2016, Saenz took leave because of the birth of her son, and was originally due to return in October. *Id*. However, in August 2016, Saenz informed Lassiter "of [her] disabilities." *Id*. From August 2016 through December 2017, she emailed the VA "doctors['] excuses and medical documentation" on a monthly basis, but received no responses. *Id*. On October 24, 2017, Saenz told Lassiter that she was having problems with receiving her mail and asked if the VA had sent her anything since May 2017. *Id*. When Lassiter responded that she should have received something from Human Resources (HR), Saenz asked for the VA to email her the mailed contents instead, but Lassiter did not reply. *Id*. On December 27, 2018, an HR representative informed Saenz that the VA had discharged her on October 30, 2017 and sent her notice of the discharge by letter on October 24, 2017. *Id*. The VA also informed Saenz that it received a delivery notification of a letter it mailed to Saenz's listed mailing address on October 9, 2018. Saenz maintains that she never received either letter, and the October 24, 2017 letter was allegedly "unable to be delivered" and returned to HR. *Id*.[1]

On January 18, 2018, Saenz initiated contact with an EEOC counselor, and after counseling concluded, she filed an EEOC complaint on April 23, 2018, *see id.*

---

[1] Saenz asserts additional factual allegations in her response brief regarding working in a "hostile environment" and describing the diagnosis of her postpartum depression, postpartum anxiety, postpartum obsessive compulsive disorder, and post-traumatic stress disorder after the birth of her son in June 2016. *See* doc. 10 at 1. However, "[a] complaint may not be amended by briefs in opposition to a motion to dismiss." *Gibbons v. McBride*, 124 F. Supp. 3d 1342, 1381 (S.D. Ga. 2015). Accordingly, the court does not consider these factual allegations in ruling on this motion.

at 9, alleging disability and sex discrimination based on her discharge, *see* doc. 6-2 at 1.[2] The EEOC dismissed her complaint, finding that Saenz failed to initiate contact with an EEOC counselor within 45 days of her discharge as required by 29 C.F.R. § 1614.105(a). Doc. 1 at 9-10. Applying a "reasonable suspicion" standard, the EEOC found that Saenz "should have suspected discrimination as early as October 9, 2017," because she "received notice of [her] proposed removal" on that date, "but certainly by October 30, 2017." *Id*. at 10. Accordingly, the EEOC dismissed Saenz's charges, *see id*. at 12, and Saenz timely filed suit in this court. *See* doc. 1.

### III. ANALYSIS

The VA contends that the ADA claims are barred for lack of subject matter jurisdiction, and that the ADA claims and Title VII claims for gender, race, and national origin discrimination fail because Saenz did not administratively exhaust these claims. The court addresses each of these contentions in turn.

---

[2] Although Saenz did not attach the EEOC complaint to her Complaint, *see* doc. 1, the court may consider the copy of her EEOC complaint that the VA has attached to its motion to dismiss, *see* doc. 6-2, because the complaint is "central to [Saenz's] claims" and its "authenticity . . . is not challenged." *See Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005) (noting that extrinsic documents may be considered on a motion to dismiss if they are central to the plaintiff's claims are their authenticity is undisputed); *Edmonds v. Southwire Co.*, 58 F. Supp. 3d 1347, 1352 (N.D. Ga. 2014) ("In discrimination cases, the EEOC charge is a document that courts routinely consider when ruling on motions to dismiss, even if it was not attached to a pleading.").

8

### A. **Whether the Court Has Subject Matter Jurisdiction Over the ADA Claim**

The ADA prohibits "covered entit[ies]," including employers, from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . discharge of employees, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). However, as the VA notes, the United States is not a "covered entity" subject to liability under the ADA. *See* 42 U.S.C. § 12111(2) (defining "covered entity" as including "an employer"), (5)(B)(i) (excluding "the United States" from the definition of "employer"). Consequently, "because [Saenz] was a federal employee" of the VA, "she was not covered under the ADA." *See Webb v. Donley*, 347 F. App'x 443, 445 n.1 (11th Cir. 2009); *Garrett v. Postmaster General United States Postal Services*, 725 F. App'x 782, 784 (11th Cir. 2018) (noting that "the ADA does not cover federal employees").[3] Therefore, the ADA claims fail because the court lacks subject matter jurisdiction over them.

### B. **Whether Saenz Exhausted Administrative Remedies**

The VA contends that Saenz did not administratively exhaust her Title VII claims because (1) the national origin and race discrimination claims are beyond the scope of the administrative investigation of her EEOC charges, and (2) Saenz failed

---

[3] Federal employees are covered instead under the Rehabilitation Act, 29 U.S.C. §§ 791, 794(a). *See Webb v. Donley*, 347 F. App'x 443, 445 (11th Cir. 2009).

to timely initiate contact with the EEOC with respect to her claims. *See* doc. 6 at 11-13, 7-9.

1. <u>Beyond the Scope of the EEOC Investigation</u>

First, the VA contends that Saenz failed to exhaust her claims for race and national origin discrimination because these claims were not within the scope of a reasonable investigation arising out of her EEOC charges. Title VII requires a potential plaintiff to exhaust her administrative remedies before filing an employment discrimination suit. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). A Title VII action "may be based 'not only upon the specific complaints made by the employee's initial charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation which can reasonably be expected to grow out of the initial charges of discrimination." *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1224-25 (11th Cir. 2000) (citation omitted). Moreover, the EEOC regulations provide that "[a] complainant may amend a complaint at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint." 29 C.F.R. § 1614.106(d).

Saenz's EEOC complaint states only the following bases for her charges: "Sex(female)[,] Disability (Pregnancy, Postpartum depression, Postpartum anxiety, Postpartum OCD, Post Traumatic Stress Disorder)." Doc. 6-2 at 1. And, in response

to the question, "What employment related claim(s) – personnel action(s), incident(s), or event(s) caused you to file this complaint?," Saenz wrote only, "Disciplinary Action(Termination)" and listed the "date of occurrence" as October 31, 2017. *Id.* Although she concedes that she stated no other factual allegations concerning her claims in the EEOC complaint, Saenz asserts in her response that, two days after she filed the complaint, she emailed the VA Office of Resolution Management to amend her complaint to add race discrimination. *See* doc. 10 at 3.[4] However, the EEOC counselor never contacted Saenz or otherwise followed up with her about this amendment, and she asserts that "[t]he [EEOC] investigation was done without anybody talking to [her] about it." *Id.*

"[I]f an employee is hampered by the action of the agency . . ., he or she should not be deemed thereby to have failed to comply with exhaustion requirements." *Brown v. Snow*, 440 F.3d 1259, 1264 (11th Cir. 2006). Saenz's newly-asserted allegations in her response, and her attached email correspondence, raise a question of fact as to whether her attempt to amend her EEOC complaint was "hampered by the action"—or, in Saenz's case, non-action—of the EEOC. *See id.*; *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 964 (3d Cir. 1978) ("Once the charging

---

[4] Saenz attaches a copy of her email to her contact at the VA Office of Resolution Management, Kelley Schafer, which reflects that, on April 25, 2018, Saenz emailed Schafer, stating, among other things, "Can I add race discrimination to my complaint or do you have to do it?" Doc. 10 at 9. Schafer responded, "You can let you [sic] Case Manager know once assigned." *Id.*

11

party has done all that he can reasonably do to amend his charge in accordance with the Commission's regulations, the statutory policy of providing the EEOC with an opportunity to reconcile the grievance has been fulfilled."); *Khazzaka v. Univ. of Scranton*, No. 3:01CV211, 2001 WL 1262320, at *3 (M.D. Pa. Oct. 22, 2001) (denying motion to dismiss where plaintiff alleged he "did not receive a response to [his] attempt to amend" his EEOC complaint and did not hear from EEOC until almost a year later). Whether Saenz's attempt to amend was indeed "hampered" by the EEOC is an issue for the parties to develop in discovery. Therefore, dismissal of Saenz's race discrimination claim would be premature.

However, Saenz does not allege that she attempted to add her national origin discrimination claim, or otherwise address the motion to dismiss this claim. *See* doc. 10. Accordingly, because Saenz's EEOC complaint did not allege "national origin" as a basis for discrimination, or otherwise allege facts concerning national origin, this claim is not "within the scope of the EEOC investigation which can reasonably be expected to grow out of the initial charges of discrimination." *See Francois v. Miami Dade County, Port of Miami*, 432 F. App'x 819 (11th Cir. 2011) (finding plaintiff failed to exhaust administrative remedies for national origin discrimination claim "because he did not check the box for national origin [in his EEOC complaint], or allege any facts in the narrative section that could be construed to raise such a claim of discrimination."); *Chanda*, 234 F.3d at 1224-25 (finding that plaintiff failed

to exhaust administrative remedies for national origin discrimination claim where plaintiff's form complaint only alleged disability discrimination and retaliation).

### 2. 45-Day Initial Contact Deadline

Next, the VA contends that the Title VII discriminatory discharge claims fail because Saenz failed to "initiate contact with a [EEOC] Counselor within 45 days of the effective date of the [alleged discriminatory] action," i.e. her discharge, as required under EEOC regulations. *See* doc. 6 at 11-13; 29 C.F.R. § 1614.105(a)(1).[5] Saenz concedes that she failed to initiate contact within 45 days after her discharge. She contends, however, that she did not become aware of her discharge until more than 45 days after her discharge, and could not have reasonably learned of her discharge before then. *See* doc. 10 at 1-3. Moreover, she contends the VA intentionally failed to inform her of her discharge. *See id*. at 2.

"The district court is not required to defer to [an] EEOC determination, and it must conduct a de novo review of the claims." *Danielle-DiSerafino v. Dist. Sch. Bd.*

---

[5] The regulations provide, in part:
    (a) Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.
    (1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.
29 C.F.R. § 1614.105. Because the alleged discriminatory act in this case is a "personnel action," Saenz had to initiate contact with a Counselor within 45 "of the effective date of" her discharge, which was October 30, 2017. *See id*.

*of Collier Cty., Fla.*, 756 F. App'x 940, 944 (11th Cir. 2018); *see Teemac v. Henderson*, 298 F.3d 452, 455 (5th Cir. 2002) (finding that EEOC determination about equitable tolling of 45-day contact deadline is reviewed *de novo* by district court). "Generally, when the claimant does not initiate contact within the 45–day charging period, the claim is barred for failure to exhaust administrative remedies." *Shiver v. Chertoff*, 549 F.3d 1342, 1344 (11th Cir. 2008). Critically, however, § 1614.105 also provides a good-faith exception for a complainant's failure to initiate EEOC contact:

> The agency or the Commission shall extend the 45-day time limit . . . when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been [sic] known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

29 C.F.R. § 1614.105(a)(2). This regulation codifies the doctrine of equitable tolling, *see Teemac*, 298 F.3d at 455, whereby the party seeking tolling must prove "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *See Villareal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 971 (11th Cir. 2016) (en banc). However, "[e]quitable tolling 'is an extraordinary remedy which should be extended only sparingly.'" *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1242 (11th Cir. 2004). Similarly, a plaintiff may estop a defendant from asserting a failure-to-exhaust

14

defense if she shows "the defendant has taken active steps to prevent [her]" from complying with administrative deadlines or otherwise exhausting her administrative remedies. *See Smiley v. Alabama Dep't of Transp.*, 778 F. Supp. 2d 1283, 1294 (M.D. Ala. 2011).

In an apparent effort to pre-empt Saenz's equitable tolling arguments, the VA attached to its motion various emails, letters, and USPS and UPS tracking information, indicating the VA attempted to contact Saenz and notify her of her discharge while she was on leave. *See* docs. 6-1, 6-3, 6-4, 6-5. In particular, the letters and tracking data indicate that a "Proposed Removal" letter, which stated the VA would notify her of any potential discharge within 15 days of receipt, *see* doc. 6-5 at 17, was delivered to Saenz's address on October 9, 2017, *see id*. at 19. However, it is unclear from the proffered UPS "Certified Mail Receipt" whether or when the October 24, 2017 removal letter, expressing the VA's decision to discharge Saenz effective October 30, 2017, *see* doc. 6-1 at 3, was delivered to the listed mailing address, *see* doc. 6-1 at 7. In light of this uncertainty, and Saenz's assertion that she only received (and responded to) the VA's April 2017 letter, which threatened "disciplinary action, up to and including removal," if she failed to provide medical documentation by May 5, 2017, *see* doc. 10 at 2; *see* doc. 6-3 at 6, the court cannot find at this juncture that equitable tolling is not warranted. Whether Saenz is correct that Lassiter "purposely let the 45 days from [the date of her discharge] pass"

without informing her of her discharge, doc. 10 at 2, or whether she acted unreasonably in failing to keep the VA updated on her change of mailing address, *see id.*, are issues for another day. For now though, in lieu of considering matters outside the pleadings, *see Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005) (noting that extrinsic documents may be considered on a motion to dismiss if they are "central to the plaintiff's claim" and their "authenticity . . . is not challenged."), the court will give the parties an opportunity to conduct discovery and to sufficiently develop the record. Therefore, the motion to dismiss the discriminatory discharge claims is due to be denied.

## IV. CONCLUSION AND ORDER

For all these reasons, the VA's motion to dismiss is **GRANTED** as to the disability and national origin discrimination claims, and **DENIED** as to the race and gender claims. Accordingly, the ADA claims and Title VII national origin discrimination claims are **DISMISSED**. The VA's answer as to the remaining claims is due by September 13, 2019. This matter is **SET** for a Rule 16 Scheduling Conference at 9:00 a.m. on September 19, 2019. Five minutes prior to the scheduled call time, parties should dial 888-557-8511 and enter access code 4541204.

**DONE** the 23rd day of August, 2019.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE